474 So.2d 955 (1985)
HOWARD TRUCKING CO., INC.
v.
John STASSI, II, Arnold M. Lupin, Alan N. Jacobs, Ernest E. Cherrie, Jr., and Kenneth N. Adatto.
Nos. 85-CA-48, 85-CA-49.
Court of Appeal of Louisiana, Fifth Circuit.
June 3, 1985.
Rehearing Denied September 17, 1985.
*956 Ralph S. Hubbard, III, David R. Richardson, Barham & Churchill, New Orleans, for plaintiff-appellant.
Lawrence D. Wiedemann, Wiedemann & Fransen, New Orleans, for defendant-appellee.
William R. Forrester, Jr., Roger A. Stetter, Lemle, Kelleher, Kohlmeyer, Hunley, Moss & Frilot, New Orleans, for defendants-appellees.
Before CHEHARDY, GAUDIN and GRISBAUM, JJ.
GRISBAUM, Judge.
This is an appeal from a summary judgment in favor of the defendants. We affirm.
We are called upon to determine the following issues:
(1) whether the trial court erred in finding there was no genuine issue of material fact;
(2) whether the trial court erred, as a matter of law, in holding that the doctrine of res judicata was inapplicable and in failing to invoke either the doctrine of collateral estoppel or equitable estoppel; and
(3) whether the trial court erred in finding the prior judicial confessions did not estop the defendants from claiming the agreement entered into by the parties was in the nature of a sale and not of lease.
This action arises out of a continuing guarantee agreement executed by the defendants/appellees, John Stassi II, Arnold M. Lupin, Alan N. Jacobs, Ernest E. Cherrie, Jr., and Kenneth A. Adatto, in favor of the plaintiff/appellant Howard Trucking Company, Inc. guaranteeing the obligations of Orleans-Iberia, Inc. The obligations arise, according to the plaintiff, under a series of leases of oil-field hauling equipment by Howard Trucking to Orleans-Iberia. Subsequent to the making of this agreement, Orleans-Iberia was authorized to be dissolved by the Bankruptcy Court for the Eastern District of Louisiana, on November 16, 1983, with no distribution to its creditors.
The events leading to the present lawsuit began in the summer of 1981. Howard Trucking had been losing money, apparently, on its oil field hauling operations. Don M. Howard, Howard's president, decided to begin phasing out of this oil field hauling business and into the business of brokering oil field moving equipment. He was approached by John Stassi II. He asked Howard to sell the equipment to him and the doctors. He proposed to buy the equipment for approximately 1.25 million dollars and to operate it under Howard's Interstate Commerce Commission License, with Howard receiving a commission on Orleans-Iberia's gross sales. Stassi asked Howard to structure the transaction as a series of leases rather than as sales and to assign the investment tax credits to the Sub-chapter Corporations owned by Stassi and the doctors. Stassi supplied form leases, and these leases were the instruments ultimately signed by the parties.
Orleans-Iberia was obligated to pay the full "purchase price" of the equipment *957 from the inception of the contracts. The residual value was paid in advance rather than at the end of the "lease," and there was a mere $100 option to purchase this very valuable equipment at the end of the term of the lease.
A clause of the lease supplied by John Stassi provided the following in the event of default:
The Lessor may without notice, but shall not be obligated to, sell all or any portion of the leased equipment at public or private sale, upon such terms as it may deem advisable. And in the event of any such sale the Lessor shall, in addition to other rights and remedies hereunder, be entitled to retain, as liquidated damages and not as penalty, all proceeds of such sale, and to recover from the Lessee as additional rents any deficiency with respect to the leased equipment sold determined as provided in paragraph 16 ... (Emphasis added)
Furthermore, paragraph 16 provides:
If the net sale proceeds from the sale of any equipment are less than the present value of rentals remaining unpaid for the leased term plus the Residual Value specified herein, and plus any other obligations of the Lessee to Lessor hereunder, the Lessee shall properly pay such amount to Lessor as additional rent ...
In addition to the protection of the foregoing Lease provisions, Howard demanded and received continuing guarantee agreements from each of the shareholders of the Lessee corporations, the defendants herein, pursuant to which they personally bound themselves to underwrite the performance of Orleans-Iberia under the leases. A clause in each of the four guarantee agreements provides as follows:
The Undersigned also agrees that the written acknowledgment of the debtor of the judgment of any court establishing the amount due from the debtor shall be conclusive and binding on the Undersigned.
Seven of the leases were signed on October 5, 1981, and the eighth on January 5, 1982. Howard Trucking executed an "election" to treat the leases as purchases for federal investment tax credit purposes only, and to assign the tax credit to Orleans-Iberia, thereby giving Orleans-Iberia a double tax advantage: Orleans-Iberia could treat 100 percent of the lease payments as business expenses and therefore deduct them fully pursuant to the tax code (rather than capitalizing the assets and depreciating them over a period of years), and it could utilize the investment tax credit normally reserved to the owner of the equipment.
By February 19, 1982, Orleans-Iberia was in arrears in its payments, and on October 14, 1982, it filed a petition under Chapter 11 of the Bankruptcy Act. Exhibit B attached to the debtor's petition (exhibit A) contained a "STATEMENT OF DEBTOR'S ASSETS." The first asset listed was:
(1) Leasehold interests in various motor vehicles and related equipment and Schedule attached to equipment lease attached hereto.
The same exhibit described "Debtor's Nature of Business" as follows:
Debtor leases the motor trucks, trailers, and related equipment from Howard Trucking Company, Inc. as per Schedule `A-1', and leases said equipment back to Howard Trucking Company, Inc. by owner-operator agreements pursuant to which Howard operates the equipment in connection with its business as a common carrier for hire. Debtor derives the gross income from the hire of said equipment by Howard less expenses relative thereto and is obligated to pay Howard a fixed monthly rent out of the net operating profit. As of September 20, 1982, Debtor, due to lack of resources and unwillingness of Howard to advance funds, was forced to curtail its business activities. The motor vehicles, trailers and related equipment are presently stored pending Debtor's formulation of a plan of reorganization and approval by the court.
The equipment itself was not listed as an asset of the debtor.
*958 Approximately two weeks subsequent to Orleans-Iberia's filing in Bankruptcy Court, Howard Trucking filed the present suit on the continuing guarantee agreements against the four defendants named above and was met by the defendants' dilatory exception of prematurity based on failure to discuss the assets of the principal debtor, Orleans-Iberia, which were protected by the automatic stay order issued by the Bankruptcy Court.
On November 18, 1982, at the first meeting of creditors, the testimony of John Stassi, President of Orleans-Iberia, is as follows:
Orleans-Iberia leases a truck terminal from our (sic. Howard) Trucking Company and also leases a group of trucks and trailers for purposes of hauling oil field rigs and other heavy equipment ...
At the present time, the vehicles leased from Howard are stored through an arrangement, temporary arrangement with Howard at the terminal premises which the company leases from Howard.
Howard has agreed to our mutual benefit to maintain the security and the preservation of the vehicles depending on the outcome of these proceedings and the formulation of the plan of these proceedings.
As of the present time, however, the Company is not doing business ...
Stassi's statement at the creditors' meeting also included the following:
We have title to none of the vehicles, we only have lease rights with options to purchase if we pay out the lease.
On January 10, 1983, Howard Trucking filed an application to Compel Adoption or Rejection of Leases, in Bankruptcy Court, in which it asserted that Stassi's remarks at the first meeting of creditors provided little hope that Orleans-Iberia could cure its defaults and assure future performance under the Leases. In this application, Howard stated:
Additionally, the equipment leases described above ... are, in fact, a lease-purchase agreement ...

Due to the rapidly depreciating nature of the leased equipment, it is essential that this application be granted and that the time period given to the debtor to adopt or reject the lease be as brief as possible, and that the 15 day normal period for same be waived by the court in the interest of judicial efficiency as other motions are pending before the court for January 18, 1983, and the issues raised here in this application were also raised at the... meeting held on November 18, 1982.
Thereafter, on January 18, 1983, Judge Kingsmill ordered the leases rejected and ordered Howard Trucking to take the vehicles back.
By November 16, 1983, the administration of the bankrupt estate was closed with no distribution whatsoever to the creditors. After the Bankruptcy Court ordered rejection of the leases and return of the property to Howard Trucking, it sold the equipment privately. Howard Trucking alleges it assumed the property was adjudicated to be in its ownership and therefore there was no statutory requirement for a judicial sale of the property in order to qualify for a deficiency judgment, which it requested in the proceeding in the lower court, since there was no debtor to be protected under the Deficiency Judgment Act. Accordingly, Howard Trucking contacted Nelson International and arranged for Nelson International to hold a public auction. After the auctioneer's commission and cost of advertising, the net proceeds of the sale on March 2, 1983, amounted to $491,851.12. The defendants moved for summary judgment based on the argument that the instruments underlying the guarantees are sales agreements, rather than leases, and that the Deficiency Judgment Act bars a repossessing creditor from suing for the deficiency absent a judicial sale of the repossessed property.
On May 9,1984, the trial court denied the motion for summary judgment and stated the following:
The agreement between the parties appears to have been intended as a lease, rather than an illegal conditional sale.

*959 The referee in Bankruptcy clearly sets out these agreements to the leases and there was no objection to that ruling.
Thereafter, on September 13, 1984, defendants filed a second motion for summary judgment arguing that they were not bound by the ruling of the Bankruptcy Court by either res judicata or collateral estoppel, and more importantly, the characterization of the transaction as a lease as stated by the trial court's judgment of May 9, 1984 is contrary to Louisiana jurisprudence. Thereafter, the trial court executed judgment granting the motion for a summary judgment.
We now turn to the initial issue of whether the trial court erred in determining there was no genuine issue of material fact. Louisiana Code of Civil Procedure article 966, in pertinent part, provides that a trial judge may grant a motion for summary judgment if there are no genuine issues of material fact in dispute and movers are entitled to a judgment as a matter of law. Howard Trucking contends the material fact at issue was the intent of the parties in making the contract, whether they intended the contract to be a lease or a sale.
Article 967 of the Louisiana Code of Civil Procedure states that when a motion for summary judgment is made and supported by affidavits, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided, must set forth specific facts showing there is a genuine issue for trial. It further states that if the party fails to do so, summary judgment is appropriately rendered against him. We find Howard Trucking failed to set forth any facts demonstrating the existence of a genuine issue of fact for trial. The trial court held, as a matter of law, the agreement was in the nature of a sale. The affidavits submitted by the plaintiff merely allege that John Stassi wanted to call the contracts between the plaintiff and Orleans-Iberia leases for tax purposes and that Stassi supplied the printed lease forms which were signed by the parties. These facts were not contested by any party to the lawsuit and do not, in any event, bear upon the holding of the trial court. Therefore, from the record facts, we find the trial court did not err in determining there was no genuine issue of material fact for trial.
We now turn to decide whether the trial court erred in determining the defendants were entitled to judgment as a matter of law. The plaintiff points out that the contract forms were entitled "lease"; they were structured as leases in accordance with the request of John Stassi, who was the president of Orleans-Iberia, Inc., and the tax attorney and a shareholder of that corporation. Furthermore, Orleans-Iberia did not list the equipment among its assets in Bankruptcy Court as it would have been obliged to do had the title to the equipment been with Orleans-Iberia as debtor. Moreover, as presented hereinabove, Stassi and counsel for Orleans-Iberia consistently referred to the instruments as leases in the Orleans-Iberia bankruptcy proceedings. The Bankruptcy Court issued an order, acquiesced in by Orleans-Iberia and now final and unappealable, which order seems to assume the contracts between the parties were leases rather than purchases.
The defendants, on the other hand, urge us to affirm the decision of the trial court's finding that the contracts between the parties were thinly disguised conditional sales. As stated by the court:
In this case the residual value was paid in advance rather than at the end of the lease, so that it is the thinnest disguise for a downpayment. The so-called lease payments are clearly installments and the $100 option to purchase this very valuable equipment does not obscure the fact that this is a conditional sale agreement.
In appellate brief, the defendants point out the following:
The total amount of `rental payments' stipulated in the `leasing agreements' was equal to the full agreed value of the equipment, less a $275,000 cash downpayment, *960 with interest at 16.7 per cent per annum.
A $275,000 cash downpayment was required for the contracts and was paid by Orleans-Iberia to plaintiff within 90 days of the October 5, 1981 closing.
Orleans-Iberia was required to pay the full value of the equipment, plus 16.7 percent interest, whether or not it exercised the `option' to purchase the equipment for $100 per `lease.'
The defendants urge that the foregoing facts compel the conclusion that the transaction between the plaintiff and Orleans-Iberia was a credit sale. It is well-established that we are not bound by the label placed on a written agreement or the subjective intent of the contracting parties, but must look to the substance of the transaction in determining rights and obligations. Pastorek v. Lanier Systems Company, 249 So.2d 224 (La.App. 4th Cir.1971). Words will have import and can be binding only when they describe relationships which actually exist, but not when they are merely labels which are used to alter or disguise actual relationships. Pastorek, supra.
We agree with the reasoning of the trial court, as stated in its reasons for judgment, that the parties in fact entered into a sale agreement, and therefore, we find the trial court did not err in determining as a matter of law the defendants were entitled to summary judgment. See B.N.O. Leasing Corp. v. Hollins & Hollins, Inc., 448 So.2d 1329 (La.App. 5th Cir.1984).
We now turn to decide whether the trial court erred by holding that the doctrine of res judicata was not applicable. We note the judgment of the Bankruptcy Court is a final judgment, which is not subject to appeal at this point; however, the thing adjudicated in the Bankruptcy Court judgment is different from that which was adjudicated in the state court, which is now on appeal. It is true the Bankruptcy Court's order of January 18, 1983 providing for the debtor's (Orleans-Iberia's) rejection of the leasehold in Bankruptcy Court, necessarily depended upon the court's assuming that the instruments in question were in fact leases and that title to the equipment was in Howard Trucking. The defendants allege the characterization of the transaction as a lease was essential to the order rejecting it, for only "executory contracts" (including leases) may be rejected. 11 U.S.C., Section 365.
We find, however, that the parties were treating the agreement as a lease, and the Bankruptcy Judge simply had no reason to question this. Clearly, it was not an issue in the bankruptcy proceeding; therefore, there is no judgment binding on this matter.
Howard Trucking further alleges the defendants should be estopped from collaterally attacking a Federal Court order recognizing title in Howard Trucking Company. Our jurisprudence clearly states Louisiana law does not recognize the doctrine of collateral estoppel. See Welch v. Crown Zellerbach Corp., 359 So.2d 154 (La.1978). Furthermore, and more significantly, the Bankruptcy Court never actually adjudged the transaction to be per se a lease rather than a sale. Moreover, under the doctrine of collateral estoppel, a decision in a prior forum on an issue of law is not binding in subsequent litigation between the same parties on a different cause of action; the doctrine applies only to previously decided questions of fact. Shell Oil Company v. Texas Gas Transmission Corp., 176 So.2d 692 (La.App. 4th Cir.1965). The Shell Oil court held that a determination as to the characterization of an agreement as a sale or a lease is a question of law. Thus, we find the doctrine of collateral estoppel cannot properly be invoked in this case.
Howard Trucking also contends the defendants are equitably estopped by their previous statements, made in Bankruptcy Court, from asserting the contract is one of sale. Equitable estoppel applies when the following elements are present:
(1) A representation by word, action, or inaction; (2) justifiable reliance on the *961 representation; and (3) a change in position to one's detriment because of the reliance. American Bank & Trust Company v. Trinity Universal Insurance Company, [251 La. 445], 205 So.2d 35, 40 (La.1967); Wilkinson v. Wilkinson, 323 So.2d 120, 126 (La.1975).
Equitable estoppel does not apply in this case because Howard Trucking was privy to all the same information that the defendants were aware of and thus it cannot be said that Howard Trucking justifiably and innocently relied on the representation by the defendants. Both parties were equally aware of the circumstances surrounding the contractual agreement which they entered into, and were in equally good positions to determine the nature and characterization of this contract, be it sale or lease.
Finally, Howard Trucking argues the judicial confessions made by the defendants, as well as confessions made by them out of court, precludes them from now claiming protection under the Deficiency Judgment Act.
Louisiana Civil Code article 2291 sets out the binding effect of judicial confessions. Article 2291 provides:
The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.
It amounts to full proof against him who has made it.
It cannot be divided against him.
It cannot be revoked, unless it be proved to have been made through an error in fact.
It cannot be revoked on a pretense of an error in law.
An earlier judicial admission does not in a subsequent proceeding bind a person making the same, nor does it estop him from denying the correctness thereof, unless the other party claiming the benefit of judicial estoppel resulting therefrom has been deceived by such judicial confession and has relied or acted thereon to his prejudice. Succession of Turner, 235 La. 206, 103 So.2d 91 (La.1958). Because we find the plaintiff did not rely to its detriment on judicial confessions made by the defendants during the bankruptcy proceedings, we find the trial court was correct in not recognizing the judicial confessions as full proof against the defendants.
For the reasons assigned, the judgment of the trial court is affirmed; all costs of this appeal are to be assessed against the appellant.
AFFIRMED.