509 So.2d 639 (1987)
Paul SUMMERVILLE, Plaintiff-Appellee,
v.
MISSOURI PACIFIC RAILROAD COMPANY, Defendant-Appellant.
No. 86-494.
Court of Appeal of Louisiana, Third Circuit.
May 13, 1987.
Writ Denied September 21, 1987.
*640 Provosty, Sadler and Delaunay, Ronald J. Fiorenza, Alexandria, for defendant-appellant.
James D. Davis, Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, C.J., and DOUCET and KNOLL, JJ.
DOMENGEAUX, Chief Judge.
The plaintiff, Paul Summerville, brought this suit against the defendant, Missouri Pacific Railroad Company, seeking to recover damages to his home due to flooding and additionally seeking injunctive relief. The district court entered judgment in favor of the plaintiff, awarding him $15,850.00 for the damages to his home, and further granting him injunctive relief, requiring the defendant to maintain culverts so that water will be able to flow freely through them. From this judgment the defendant appeals.
On December 25, 1982, Paul Summerville's home was flooded to a level of about four inches after a rainstorm. The water, which contained red clay, remained in the house for approximately two hours. The flooding resulted in damage to the floor, baseboards, and doors of the house. Mr. Summerville filed this suit on October 5, 1983, to recover for these damages. In this suit Mr. Summerville alleged that Missouri Pacific has obstructed the natural drainage of the area by construction of its railroad track without providing and maintaining adequate alternative means to drain the land. Mr. Summerville argues that it is as a result of this condition that his home was flooded on December 25, 1982.
Missouri Pacific denied Mr. Summerville's allegations and raised the peremptory exception of prescription, alleging that the damages to Mr. Summerville's home occurred more than a year before he filed this suit. More specifically, Missouri Pacific alleged that the damages to Mr. Summerville's home occurred in an April, 1980 flood where water rose to a level of six to eight inches in the house and remained for from four to six hours.
*641 After a trial on the merits, the district court denied Missouri Pacific's peremptory exception of prescription, finding that the damages to Mr. Summerville's home occurred within one year of the filing of the suit.
The district court also concluded that Missouri Pacific was at fault for the $15,850.00 in damages to the plaintiff's home and rendered judgment for that amount to plaintiff. The district court further concluded that Mr. Summerville is entitled to injunctive relief, granting an injunction requiring Missouri Pacific to maintain culverts under its railroad tracks so that water will be able to freely flow through them.
On appeal Missouri Pacific assigns as error the trial court's finding that the damages to Mr. Summerville's house occurred within one year of his filing suit and the trial judge's conclusion that Mr. Summerville's claims had not prescribed. Missouri Pacific also assigns as error the trial court's conclusion that it is liable for the damages complained of here under La.C.C. art. 655 and 656.
In its first assignment of error, Missouri Pacific contends that the district court erred as a matter of law and fact in concluding that Mr. Summerville's claim for damages had not prescribed.
The evidence at trial revealed that Mr. Summerville's home had flooded at least two times; once in 1980, and again on December 25, 1982. Suit was filed on October 5, 1983. The evidence reveals that due to the flooding in 1980, water rose in Mr. Summerville's house to a level of between six and eight inches and took between four and six hours to recede. Mr. and Mrs. Summerville testified at trial that the water in the house during the 1980 flood was clear.
The evidence also revealed that, due to the flooding of December 25, 1982, water rose in the Summerville home to a level of about four inches, and took approximately two hours to recede. Mr. and Mrs. Summerville testified that the water in the house during this flood was not clear, but rather, contained red clay.
Mrs. Summerville also testified that after the 1980 flood the only damage which occurred was to the flooring where some tile popped up, and to a microwave cart. She further testified that the damage after the December, 1982 flood was more severe, indicating that a substantial amount of mud had entered the house. Mr. Summerville also testified that the major damage to the house occurred after the December, 1982 flood, although he indicated that there was some damage to the floors, baseboards, and doors after the 1980 flood.
From our review of the record, we cannot conclude that the trial judge was manifestly erroneous in finding that the damages complained of here occurred within one year of the filing of this suit. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
Missouri Pacific also argues that the proper prescriptive period in this case is the two year period provided for in La.R.S. 9:5624, contending that under that statute the prescriptive period commences to run at the time any damage is sustained from a flooding and that subsequent damage due to flooding does not begin a new prescriptive period. They argue, therefore, that all of Mr. Summerville's claims for damages due to any flooding prescribed two years from the date damages were sustained in the first flooding of 1980.
We need not address Missouri Pacific's contentions concerning when prescription under La.R.S. 9:5624 begins since we conclude that that statute is not applicable to this case.
La.R.S. 9:5624 provides the following:
"When private property is damaged for public purposes any and all actions for such damages are prescribed by the prescription of two years, which shall begin to run when the damages are sustained."
The jurisprudence interpreting this statute has held that this prescriptive period is not applicable when the act causing the damages was not an intentional and necessary consequence of a public purpose construction project. Perkins v. Simon, 265 *642 So.2d 804 (La.App. 3d Cir.1972); Boudreaux v. Terrebonne Parish Police Jury, 422 So.2d 1209 (La.App. 1st Cir.1982); Oswalt v. Irby Construction Company, 424 So.2d 348 (La.App. 2d Cir.1982).
The damages in this case, allegedly being the result of the negligent failure to provide and maintain adequate drainage facilities, are not the necessary consequence of a public purpose construction project. Therefore, the prescriptive period of La. R.S. 9:5624 is not applicable.
In its second assignment of error, Missouri Pacific alleges that the trial court erred in finding that it was responsible for the damages to the Summerville house complained of here.
In finding Missouri Pacific liable, the district judge made the following conclusions in his written reasons for judgment:
"We conclude that the plaintiff, the owner of the dominant estate, is entitled to the right of natural drainage under [Civil Code] Articles 655 and 656, and the defendant has no right to obstruct it. The defendant's railroad tracks obstructed the natural drainage, and the culverts which were installed to correct this obstruction were inadequately maintained."
La.C.C. art. 655 provides the following:
"An estate situated below is bound to receive the surface waters that flow naturally from an estate situated above unless an act of man has created the flow."
And La.C.C. art. 656 provides:
"The owner of the servient estate may not do anything to prevent the flow of the water. The owner of the dominant estate may not do anything to render the servitude more burdensome."
The legislature has recognized the effect that constructing a railroad track has on the natural drainage of surrounding land and has by statute specifically addressed the duty of a railroad to relieve obstructions to natural drainage caused by its railroad roadbeds. La.R.S. 45:451, enacted for this purpose, provides the following:
"All railway companies operating a line or system of railroads in Louisiana shall drain all railroad roadbeds which obstruct or in any manner retard or interfere with the natural drainage of any land, farm or plantation traversed by the line or system of railroads, by constructing and maintaining ditches, culverts, or drains under their roadbed or under the crossings over their roadbed on their right of way, either parallel to or at angles with their roadbeds or crossings, of sufficient width, depth and capacity to carry off water rapidly. These railway companies shall do all things necessary to relieve such obstructed natural drainage."
In Terrebonne Parish Police Jury v. Matherne, 405 So.2d 314 (La.1981), the Supreme Court examined the general duties provided for in Civil Code arts. 655 and 656, stating:
"Our jurisprudence has established a consistent interpretation of these precepts. The owner of the lower lands of two estates can do no act which would impede the natural flow of waters on his lands from those of the higher estate. The owner of the dominant estate may make all drainage works which are necessary to the proper cultivation and to the agricultural development of his estate. To that end, he may cut ditches and canals by which the waters running on his estate may be concentrated, and their flow increased beyond the slow process by which they would ultimately reach the same destination. But the owner of the dominant estate cannot improve his lands to the injury of his neighbor by diverting waters from their natural flow, and concentrating them so as to flow on the lower lands of the servient estate at a point which would not be their natural destination, thus increasing the volume of water which would by natural flow run over or reach any portion of the servient estate, and to thus render the servitude due by the estate below more burdensome." (Citations omitted).
With these principles in mind we now turn to a review of the record and the trial judge's findings.
The evidence shows that Mr. Summerville's home sits on a one acre lot which is *643 part of a 730 acre drainage area. It was shown that the house is west of La. Hwy. 71, which runs north and south. Between the Summerville house and Hwy. 71, Missouri Pacific maintains a railroad track, which runs parallel to Hwy. 71. Running parallel to the railroad track, and between the Summerville house and the track, is located a drainage ditch, called the north-south ditch, which flows from north to south. South of the Summerville house is another drainage ditch, called the Snowden Lane ditch, which flows from west to east and drains into Chatlin Lake.
Also a berm or mound of dirt is situated between the north-south ditch and the railroad tracks.
The evidence established that the direction of drainage for the 730 acre watershed area is generally from the west towards the east, where the water enters the north-south ditch. Once in the north-south ditch, the water drains towards the south where it then passes under the railroad tracks through three culverts. Once past the railroad tracks the water passes under Hwy. 71 through a box culvert to Snowden Lane ditch and ultimately to Chatlin Lake.
It was established at trial that Missouri Pacific had placed twelve culverts beneath its railroad tracks in order to drain the 730 acre drainage area, of which Mr. Summerville's lot is a piece. It was further shown that because of the berm between the north-south ditch and the railroad tracks, water could not reach nine of the culverts underneath the railroad tracks. Mr. Smith, a civil engineer employed by the Louisiana Department of Transportation and Development, described the resulting condition as creating a funneling effect, indicating that the water had to funnel to the south where it had access to three of the culverts underneath the railroad tracks. Mr. Smith stated further that if the water was allowed to flow underneath the railroad tracks at various points, it would not all have to go down to the three culverts to the south where it had been draining. He indicated that it was his opinion that this would greatly reduce the flooding problem.
His testimony was supported by that of Mr. Bernard Mayeaux, also a civil engineer with the Louisiana Department of Transportation and Development. Mr. Mayeaux stated that because draining water could not reach some of the culverts beneath the railroad, all of the water was forced to drain through the three culverts at the southern end of the north-south ditch.
The testimony of the expert witnesses also indicated that the three culverts through which the water drained at the southern end of the north-south ditch were partially obstructed. They further indicated that this partial obstruction of the three culverts was a contributing cause of the flooding of the Summerville's house.
Testimony also indicated that at the time of the flooding on December 25, 1982, the water level in Chatlin Lake rose to approximatey 63 feet above sea level. The testimony of Mr. Mayeaux indicated that because the water level of Snowden Lane ditch was also approximately at 63 feet above sea level, the water in Snowden Lane ditch could not drain into Chatlin Lake. This caused the water in Snowden Lane ditch to back up, which also caused the water passing under the railroad tracks to back up in the north-south ditch, and ultimately flooding the Summerville home.
The evidence further established that the north-south ditch and the Snowden Lane ditch were not adequate for the quantities of water involved here and that they were improperly maintained, with the testimony indicating that these ditches contained trees and shrubbery which impeded the flow of water through them.
The district court, concluded that, in addition to the culverts being partially obstructed, the ditches were not properly maintained, Chatlin Lake was unable to receive any more water, and the berm prevented water from even reaching some of the railroad's twelve culverts.
We cannot find that the conclusions reached by the district judge are manifestly erroneous. His conclusion that the three culverts through which water could drain were partially obstructed and that this obstruction was a contributing factor to the *644 flooding is supported by the record. We find, however, that as a matter of law these facts do not provide a sufficient basis upon which liability can be assessed against Missouri Pacific. For this reason, we reverse.
Under Civil Code arts. 655 and 656 and under La.R.S. 45:451, railway companies maintaining railroad beds which obstruct the natural drainage must provide sufficient means to carry off water rapidly. However, this duty extends only to relieving obstructed natural drainage, not to drainage which is more burdensome.
It was shown in this case that the natural drainage of the 730 acre drainage area was from the west towards the east. It was also shown that a berm or mound of dirt located between the north-south ditch and the railroad tracks prevented this natural west to east flow of water, and caused a diversion of the water to the south. The evidence did not establish that the berm was created by or was under the control of Missouri Pacific.
The evidence did establish, however, that Missouri Pacific constructed a drainage system in order to relieve the obstruction to natural drainage its railroad track caused. This system consisted of twelve culverts designed to allow water to flow underneath its tracks. However, because the berm diverted the west to east flow of water to the south before it could reach the railroad tracks, draining water could not enter nine of the twelve culverts which Missouri Pacific provided. The result was that all of the water draining from the 730 acre drainage area had to drain through only three of the twelve culverts, the other nine being bypassed. This diversion of water from its natural west to east flow, caused by the berm's position, concentrated all of the draining water in one area. This resulted in an increase in the volume of water which would otherwise flow through the three culverts at the southern end of the north-south ditch, increasing the burden on a portion of Missouri Pacific's drainage system. Missouri Pacific's duty to provide sufficient means to carry off water rapidly extends only to relieving obstructions to the natural drainage. The drainage condition of the three culverts where water could drain was not the result of the area's natural drainage. Since Missouri Pacific did provide a system of drainage which has not been shown to have been inadequate for the natural west to east drainage of water, it cannot be held liable for the damages complained of here because it failed to provide means to drain a more burdensome drainage condition caused by factors beyond its control. Therefore, the trial court erred in finding Missouri Pacific liable.
Plaintiff in this case sued only Missouri Pacific. For that reason, issues concerning any other entity or entities which may have been responsible for the flooding of his house are not before this Court, and we, accordingly, decline to speculate in that regard.
Because we conclude that Missouri Pacific is not legally responsible for the flooding complained of here, we also conclude that Mr. Summerville is not entitled to the injunctive relief he requested. Injunctive relief is available as a remedy to assure that obstructions to the natural drainage are removed before the obstructions cause harm to the dominant estate. Injunctive relief is not available to enforce a defendant's obligation to provide and maintain adequate means of relieving obstructed natural drainage absent a showing that defendant's conduct could harm plaintiff.
In this case, Mr. Summerville has shown that three of the twelve culverts in Missouri Pacific's drainage system were partially obstructed. For reasons stated herein, we have concluded that this condition was not shown to have been a breach of Missouri Pacific's duty to provide adequate drainage. Since we have concluded that plaintiff failed to show that Missouri Pacific's railroad tracks and twelve culvert drainage system caused or will cause plaintiff harm by obstructing the natural drainage, the injunctive relief plaintiff has requested is not warranted. In reaching this conclusion we do not relieve Missouri Pacific of its continuing duty, required under *645 the law as stated herein, to provide adequate means of relieving obstructed natural drainage, which includes maintenance of the culverts beneath its tracks. We merely conclude that under the facts and conclusions reached here, injunctive relief is not appropriate.
For the above and foregoing reasons the judgment of the district court is reversed and plaintiff's petition is dismissed.
Costs at trial and on appeal are assessed against plaintiff.
REVERSED AND RENDERED.