Judgment rendered November 17, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,987-CW

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

DEMECIA KING                                          Respondent

versus

THE TOWN OF CLARKS AND                               Applicants
MAYOR CHAD COATES AND
BOARD OF ALDERMAN,
CHRISSY JOLLY, SHAWN
GUINN, JASON MORRIS,
MARGIE FISHER, PATSY
FISHER IN THEIR OFFICIAL
CAPACITY AND XYZ
INSURANCE COMPANY

* * * * *

On Application for Writs from the
Thirty-Seventh Judicial District Court for the
Parish of Caldwell, Louisiana
Trial Court No. 28,642

Honorable Ashley Paul Thomas, Judge

* * * * *

HUDSON, POTTS, & BERNSTEIN, LLP          Counsel for Applicants
By: Jay P. Adams
    Sara G. White

LAW OFFICE OF CAROL D.                    Counsel for Respondent
POWELL LEXING & ASSOCIATES, PLC
By: Carol D. Powell-Lexing


* * * * *


Before MOORE, PITMAN, STONE, THOMPSON, and ROBINSON, JJ.


STONE, J., dissents with written reasons.

**THOMPSON, J.**

Plaintiff, Demecia King, owned a home in the Town of Clarks, and beginning in 2012, the house flooded with sewer water when there was a significant rainfall. After several flooding events over the years, she filed suit in August, 2016, against the town, its mayor, and the town's aldermen, alleging that her home had been inundated with sewer water due their negligence in the design and/or maintenance of the drainage system. The defendants filed a motion for summary judgment and argued that her claims prescribed one year after she knew or should have known about the flooding in her home. Because plaintiff's petition only alleged acts that occurred one year prior to filing suit, the trial court found that there was a question of fact as to prescription, and denied defendants' motion for summary judgment. As a result, defendants filed a writ application. For the reasons set forth below, we find that the plaintiff's claims are prescribed and reverse the trial court's ruling.

## FACTS AND PROCEDURAL HISTORY

The plaintiff, Demecia King ("King"), owned a home in the Town of Clarks that had a manhole located six feet from her front door. King alleges that the town owns, operates, and maintains a sewage disposal system that serves the town via the manhole in front of her home. King claims that every time there was a significant rainfall, sewage water would overflow from the toilets and bathtubs in her home onto her floors. She contends that the overflows caused damage to the floors, walls, baseboards, and furnishings and resulted in mold, mildew, and an overwhelming stench in her home. King argues that she suffered from health problems associated with the mold, including allergies, headaches, loss of sleep, emotional

distress, mental anguish, irritation, anxiety, and discomfort. After several flooding events from 2012 forward, King eventually filed suit on August 19, 2016, against the defendants, Town of Clarks, Mayor Chad Coates, and Board of Aldermen members, Chrissy Jolly, Shawn Gunn, Jason Morris, Margie Fisher, and Patsy Fisher. King asserted in her petition that when there was a significant rainfall, sewage from the manhole would flood her home. In her petition for damages, King asserted that due to the town's failure to correct its improperly functioning sewer system, her home has flooded six times over a five-year period, specifically "twice the year of 2015 during the months of April 2015 and November 2015 and with the most recent problem occurring on March 10, 2016." Discovery ensued.

King testified at her deposition that she began experiencing the flooding in her home in 2012 and that she spoke with the mayor about the problem. She testified that in 2013, 2014, and 2015, she experienced flooding in her home two to three times a year and spoke with the mayor about the problem each year. She contends that when she complained about the problem to the mayor, she was told that the town was working on getting a grant to fix the lift station on Ouachita Avenue, which was located near her house.

King provided copies of text message exchanges with Mayor Chad Coates ("Coates") in 2016 about the flooding, as part of her deposition. The record includes text messages from April 12, 2016, from Coates stating: "I'm meeting with our engineer this evening. I'm going to get him to shoot a line and see where the problem is," and "[a]lso I'm going to use all of the grant this year to redo the lift station near your house. That will help keep the water from backing up. I will do everything I can to make sure this

2

doesn't happen again!!!"  Another text message from Coates states, "[w]e need a relief pond or something along that line so that water will have somewhere to go when we get heavy rains.  I'm gonna do some research and figure out where and how we can make one.  That would I hope fix the problem."  King also provided copies of various work orders from the town from 2016, where Thomas Benson ("Benson"), the town's water sewer supervisor, tried various methods to repair or improve the flooding reported at King's address.

In response to King's petition, the defendants filed a motion for summary judgment on the basis that King had filed her petition almost four years after she first became aware of the flooding and that her claim was now prescribed.  In support of their motion, the defendants attached King's deposition, in which she estimated that between 2012 and 2018, the flooding in her home happened 10 or 12 times.  She testified that the flooding was the same each time there was a significant rainfall.  King opposed the motion for summary judgment, arguing that the flooding she experienced was a continuous tort or, in the alternative, that her communications with the mayors of the town were sufficient to act as an acknowledgment, which would suspend the running of prescription.

The trial court found that the flooding began in 2012 and that King was aware of it in 2012.  It held that the one-year prescriptive period applies to this matter and that any acts that occurred prior to one year before the filing of the lawsuit had prescribed.  The court further found that the flooding was not a continuous tort.  However, the trial court ultimately denied the summary judgment based on the fact that the petition, on its face, alleged acts that occurred within one year of the filing of suit and, thus, there

was a genuine issue of fact as to prescription. This writ application by the defendants followed.

**DISCUSSION**

The defendants raise only one assignment of error, namely that King's claims have prescribed. Specifically:

**Assignment of Error:** **The trial court erred in denying defendants' motion for summary judgment since the petition for damages was filed well over a year after plaintiff had constructive knowledge sufficient to begin the running of prescription.**

Defendants argue that King's claims are subject to a one-year prescriptive period that began to run in 2012, when she was first put on notice of the flooding in her home, and thus, all of her claims are prescribed. King contends that the flooding in her home is a continuous tort that began in 2012 or, in the alternative, that Coates' text messages are an acknowledgment sufficient to interrupt prescription.

Although typically asserted through the procedural vehicle of the peremptory exception, the defense of prescription may also be raised by motion for summary judgment. *Hogg v. Chevron USA, Inc.*, 09-2632 (La. 7/6/10), 45 So. 3d 991, 997; *Newsome v. City of Bastrop through Jones*, 51,752 (La. App. 2 Cir. 11/15/17), 245 So. 3d 248. Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791; *Bank of Am., N.A. v. Green*, 52,044 (La. App. 2 Cir. 5/23/18), 249 So. 3d 219; *Newsome*, *supra*. We view the record and all reasonable inferences to be drawn from it in the light most favorable to the nonmoving party. *Hines v. Garrett*, 04-0806 (La. 6/25/04), 876 So. 2d 764, *rehearing denied*, 04-0806

4

(La. 9/24/04), 882 So. 2d 1134; *Coleman v. Lowrey Carnival Co.*, 53,467 (La. App. 2 Cir. 4/22/20), 295 So. 3d 427, *writ denied*, 20-00594 (La. 9/23/20), 301 So. 3d 1179.

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880; *Driver Pipeline Co. v. Cadeville Gas Storage, LLC*, 49,375 (La. App. 2 Cir. 10/1/14), 150 So. 3d 492, *writ denied*, 14-2304 (La. 1/23/15), 159 So. 3d 1058. A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A genuine issue is one about which reasonable persons could disagree. *Hines*, *supra*; *Franklin v. Dick*, 51,479 (La. App. 2 Cir. 6/21/17), 224 So. 3d 1130. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Chanler v. Jamestown Ins. Co.*, 51,320 (La. App. 2 Cir. 5/17/17), 223 So. 3d 614, *writ denied*, 17-01251 (La. 10/27/17), 228 So. 3d 1230. A material fact is one that potentially ensures or precludes recovery, affects the ultimate success of the litigant, or determines the outcome of the dispute. *Hines*, *supra*; *Franklin*, *supra*.

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's

5

claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). When the motion for summary judgment is made and supported as provided in La. C.C.P. art. 966, the adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or other proper summary judgment evidence, must set forth specific facts showing that there is a genuine issue for trial. *Coleman*, *supra*.

Delictual actions are subject to a liberative prescription of one year. La. C.C. art. 3492. When damage is caused to immovable property, the one-year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage. La. C.C. art. 3493. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard or call for inquiry. *Campo v. Correa*, 01-2707 (La. 06/21/02), 828 So. 2d 502, 510-511. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry might lead, and such information or knowledge as ought to reasonably put the injured party on inquiry is sufficient to start the running of prescription. *Id.* at 511. In assessing whether an injured party possessed constructive knowledge sufficient to commence the running of prescription, the ultimate consideration is the reasonableness of the injured party's action or inaction in light of the surrounding circumstances. *Id.*

Two previous cases from this court are instructive to the present issue. In *Pracht v. City of Shreveport*, 36,504 (La. App. 2 Cir. 10/30/02), 830 So. 2d 546, *writ denied*, 03-0007 (La. 3/14/03), 839 So. 2d 46, this court held that separate instances of flooding caused by the negligent maintenance of a

6

drainage canal by a city do not constitute a continuous tort. The plaintiff in that case argued that the flooding of the canal in the ten years prior to filing suit caused erosion, which resulted in a continuous tort that suspended the running of prescription. The court rejected this argument and found that "[s]ince we can reasonably rely on the fact that it will always rain … plaintiffs' proposition would have the result of postponing the running of prescription in perpetuity. For the flooding damage will never abate until either it stops raining or the necessary repairs/modifications are made to the drainage canal to prevent flooding." *Pracht*, *supra*. The court found that the plaintiff's claims had prescribed.

In *Newsome*, *supra*, homeowners purchased immovable property in 1999 and, shortly thereafter, began to experience sewage backup into their home due to an overburdened wastewater collection system that could not contain the increased amount of water caused by rainfall. The overflow caused sewage water to back up into the toilets, tubs, and sinks of the home, resulting in damage to the residence. On February 4, 2015, the homeowners filed suit against the city for the damage to their home. Deposition testimony from one of the homeowners indicated that he had been aware of the sewage backup for over 10 years prior to filing suit. He testified that flooding from a manhole happened probably over 100 times and that he frequently complained to the city about the flooding.

The *Newsome* court followed *Pracht*, *supra*, and held that the homeowners' flooding was not a continuous tort that would suspend the running of prescription. The court found that the evidence provided by the homeowners in their opposition to the motion for summary judgment failed to show that the alleged damage to their home was caused by anything other

7

than the overburdened sewage system, which they were aware of some 10 years prior to filing suit. *Newsome*, *supra*. As such, the court found that the homeowners' claims had prescribed.

The one-year prescriptive period set forth in La. C.C. art. 3493 applies to the present matter. The court is charged with reaching a conclusion as to whether the complained of activities or negligence that occurred within one year of the date of filing suit have already prescribed.

King is attempting to identify the symptom (the flooding) that continues to result from the same problem (faulty design and maintenance). King has argued to this court that the consistent flooding in her house that has occurred since 2012, resulted from the same problem and, therefore, was a continuous tort that suspended the running of prescription. We disagree. We have previously held that multiple occurrences of flooding caused by the same alleged negligence are not a continuous tort and do not interrupt the running of prescription.

We recognized, as this court previously noted in *Newsome*, *supra*, that if the record reflects that the floods experienced by the homeowner have different causes, each flood would be its own separate cause of action with a separate prescriptive period. For example, if the system suffered a catastrophic failure from deferred maintenance, or there was some other intervening cause which complicated the functioning of the drainage system and resulted in flooding, the dates of such events would be controlling in considering if those claims had prescribed. Here, King has sought damages from a series of floods occurring in the year prior to filing her suit on August 19, 2016. We must examine the record to determine if there is a genuine

issue of fact as to the cause of the flooding complained of by King in her petition.

Defendants urge the court to find that there was only one cause of the floods that affected King's home in the years from 2012 through the date of her lawsuit. They direct the court to testimony from King, wherein she describes the floods as being the same type of overflow situation every time there was a heavy rainfall.

The record provides more specific details about the floods to King's home starting in 2016. In 2016, Benson was sent to King's home to correct flooding problems at least five times. Coates testified that the entire town and surrounding area was subject to a massive flood in March, 2016, wherein he reported that they received more than 20 inches of rainwater in one month. Coates testified that in April, 2016, he had an engineer examine the Ouachita Avenue lift station, located near King's house. Coates testified:

> As far as the engineer coming out and he did inspect, and, you know, and that's when he said that we had a sluggish-sluggish pump. We probably need to get it fixed and it could've been caused from the massive floods that we-we got because there was so much water on the town that it could've-that pump could've ran continuous and caused-and damaged the pump.

Due to the damage from the areawide flood in March, 2016, the town received a grant from FEMA and used the funds to replace the motor in the lift station on Ouachita Avenue.

The record also includes a series of work orders from 2016 based on work performed after complaints were made by King to the town about the flooding in her home. Coates testified that on March 18, 2016, Benson checked the pumps on the lift station and noted that the pump was not

9

keeping up. The work order states that Benson checked for an obstruction in the main lines and the lift station and "reprimed" the left pump. The May 10, 2016, work order includes a note from Benson, in which he stated he would request the fire department to flush the lines. Another work order, dated June 16, 2016, from Benson notes that he dug up the main line to find any elevation problems and capped off three taps that were not in service. He also replaced six feet of bad pipe at that time.

In August, 2016, Benson issued another work order stating that he would see about putting in a backflow valve on King's home. The work order notes that Benson spoke with the Louisiana Rural Water Association, which suggested a backflow preventer to stop the flooding at King's house. Benson also stated that he would smoke test all the lines on the south end of town looking for infiltration. He also installed a check valve. Finally, on September 19, 2016, Benson reported that he checked the sewer system for tie-in with the neighbor's home, shot grade on the lines from the neighbor's tie-in to check the valve, and reported that "the line is off pitch." There is evidence in the record that King continued to complain about flooding in the years 2017 and 2018, until she finally moved out of the home.

The above testimony and evidence indicate that there was an areawide flood in March, 2016, with rainfall amounts in the Town of Clarks in excess of 20 inches. The pumps of the lift station were overrun, and the damage was significant enough that the town petitioned and received a FEMA grant to fix the lift station. The record indicates that during and after this areawide flood, King's home suffered flood damage. Even after the motor in the lift station nearest to her home was repaired using FEMA money, the flooding continued. In 2016, the town's water sewer supervisor tried several different

10

methods to alleviate the flooding in her house and identified several possible problems that would cause the flooding, including old pipe and the lack of a backflow valve.

Considering the foregoing, there could be an argument made that these events may have precipitated a new source for the flooding to King's home and, thus, begun the running of prescription on a new cause of action. However, in both her briefs and her argument to this court, King has unequivocally stated that the cause of the flooding in her home was the same in 2016 as it was in 2012. No other intervening causes of the flooding were entertained or asserted by counsel for King. Considering this, and accepting King's argument in brief and oral argument, we must follow *Newsome*, *supra*, and find that King's claims relating back to the same problem that existed in 2012 had prescribed by the time she filed suit in 2016.

**Interruption of Prescription**

King argues in the alternative that her conversations with Coates acted as an acknowledgment by the defendants that was sufficient to interrupt prescription. However, the record reflects that communications between Coates and King happened in 2016, well after her claims had prescribed. Acknowledgement only serves to interrupt prescription before it has expired, with the prescriptive period beginning to run anew from the time of interruption. *Bracken v. Payne and Keller Co., Inc.*, 06-0865 (La. App. 1 Cir. 9/5/07), 970 So. 2d 582. Once prescription runs, it cannot be interrupted. *Dufrene v. Morgan Equip. Rental, Inc.*, 98-1582 (La. App. 1 Cir. 9/24/99), 754 So. 2d 1000. The prescriptive period for King was not renewed from her conversation with Coates, and it did not revive or start

11

prescription anew. We find King's argument prescription was interrupted to be without merit.

## CONCLUSION

For the foregoing reasons, we find the plaintiff's claims are prescribed and the trial court's ruling denying defendants' motion for summary judgment to be in error and it is hereby reversed, with the costs of this writ application assessed to plaintiff.

**REVERSED.**

**Stone, J., dissenting.**

I respectfully dissent. This court should affirm the trial court's judgment denying the defendant's motion for summary judgment ("MSJ").

**Overview**

The majority acknowledges the existence of a genuine issue of material fact, but grants summary judgment anyway. Furthermore, *Newsome, supra,* and *Pracht, supra,* the jurisprudence on which the majority relies, is wrong and should be overruled.

*Newsome, supra,* and *Pracht, supra,* hold that if a series of floods occurs as a result of a constant tortious condition (*e.g.*, an inadequately maintained drainage system), there is only one cause of action, even if the floods are years apart. Accordingly, even if each flood causes distinct damage to the plaintiff's home, and is precipitated by a totally separate weather system, only the first flood gives rise to a distinct cause of action under these cases. *Newsome* does, however, recognize a separate cause of action with respect to flooding caused by a different tortious condition; apparently, an example would be a different fault in the drainage system. *Id*.

The majority, in announcing the legal standard it applied, stated:

> We recognized, as this court previously noted in
> *Newsome*, *supra*, that [only] if the record reflects that the
> floods experienced by the homeowner have different
> causes, each flood would be its own separate cause of
> action with a separate prescriptive period

If this were the correct standard to apply, then there would be a genuine issue of material fact. However, as explained herein, this is not the correct legal standard. Under the facts of this case, the floods that occurred within the 12 months immediately preceding the filing of suit should be

1

treated as separate and distinct causes of action regardless of whether they were caused by something different than the earlier floods.

Additionally, the majority has tacitly presumed that all the floods were caused by the same fault in the drainage system. Stated conversely, the majority has implicitly assigned to the plaintiff the burden of proving that the floods that occurred within 12 months prior to suit were *not* caused by the same fault in the drainage system as the earlier floods. This presumption by the majority is contrary to well-established law and sound public policy.

**Applying *Newsome, supra,* and *Pracht, supra,* there is a genuine issue of material fact**

Citing *Newsome, supra,* the majority declares that for the floods that occurred within the year preceding the filing of suit to constitute separate causes of action from the earlier floods, the latter floods must have been caused by factors different from those that caused the earlier floods. In applying that standard, the majority essentially acknowledges that the *evidence* admitted for the purpose of summary judgment creates a genuine issue of material fact regarding what caused the flooding in 2016, but grants the defense's MSJ nonetheless:

> Considering the foregoing [evidence regarding what caused the floods], there could be an argument made that these events may have precipitated a new source for the flooding to King's home and, thus, began the running of prescription on a new cause of action.
> …
> However, in both her briefs and her argument to this court, King has unequivocally stated that the cause of the flooding in her home was the same in 2016 as it was in 2012. No other intervening causes of the flooding were entertained or asserted by counsel for King. Considering this, and accepting King's argument in brief and oral argument, we must follow *Newsome*, *supra*, and find that King's claims relating back to the same problem that existed in 2012 had prescribed by the time she filed suit in 2016.

2

The majority attempts to rationalize this outcome on the ground that the plaintiff's attorney: (1) in advocating for the application of the continuing tort doctrine, *argued* in brief and oral argument that this was not a new cause of the flooding; but (2) failed to alternatively argue this "different causes" standard that the majority has adopted from *Newsome, supra*.

The evidence discussed in the majority opinion does create a genuine issue of material[1] fact regarding whether the 2016 flooding resulted from a new and different cause. The argument of plaintiff's counsel does not and cannot negate the existence of that genuine issue of material fact because the argument of plaintiff's counsel is not evidence. It is universally accepted that factfinders are bound to determine what has or has not been proven strictly based on the evidence. Hence, that principle is explicitly set forth in Louisiana's standard jury instructions.[2] This principle applies equally in the context of a motion for summary judgment. Only evidence admitted for the purpose of summary judgment in accordance with La. C.C.P. art. 966 and La. C.C.P. art. 967 may be considered in determining whether a genuine issue of material fact exists, and argument of counsel, whether in brief or

---

[1] That is, it is material under *Newsome, supra,* and *Pracht, supra.* It is immaterial under the correct legal standard, discussed *infra*.

[2] § 2:1. Composite general closing instructions, 18 La. Civ. L. Treatise, Civil Jury Instructions § 2:1 (3d ed.):

> [The jury is to make] **an impartial deliberation and conclusion based upon all the evidence presented in this case, and on nothing else**… The evidence which you will be considering consists of the facts which the parties have agreed are true (which the law calls "stipulated facts"), the testimony of the witnesses, and the documents…admitted into evidence, as well as any reasonable inferences…that you can draw from the evidence. [**A]rguments by the lawyers…are not part of the evidence**. (Emphasis added).

oral argument, is not evidence. *Wilson v. Davis*, 07-1929 (La. App. 1 Cir. 5/28/08), 991 So. 2d 1052, *writ denied,* 08-2011 (La. 11/10/08), 996 So. 2d 1070, and *writ denied*, 08-2020 (La. 11/10/08), 996 So. 2d 1071; *Haney v. Davis,* 04-1716, p. 9 (La. App. 4 Cir. 1/19/06), 925 So. 2d 591, 597, *writ denied,* 06–0413 (La. 4/28/06), 927 So. 2d 293.

Admittedly, *Wilson, supra,* and *Haney, supra,* address the reverse situation from that presented in this case, *i.e.,* they held that mere argument by the attorney opposing the MSJ could not *create* a genuine issue of material fact; here, the majority holds that the attorney opposing the MSJ *negated* the existence of a genuine issue of material fact. However, this is a distinction without a difference in the context of this case.

The majority provides no explanation of its basis for holding that plaintiff's attorney's argument negated the existence of a genuine issue of material fact. Thus, it bears pointing out that the only theoretically possible basis for treating lawyer argument as evidence is unavailable in this case. Argument of counsel can only be treated as evidence is it qualifies as a judicial confession under La. C.C. art. 1853, which states:

> A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.
> A judicial confession is indivisible and it may be revoked only on the ground of error of fact.

The jurisprudence has elaborated on the Civil Code provision for judicial confession:

> To constitute a judicial confession, the statement must be an express acknowledgment of an adverse fact. *Jones v. Gillen,* 564 So. 2d 1274 (La. App. 5 Cir.); *writ den.* 568 So. 2d 1081 (La. 1990). The effect is to waive evidence as to the subject matter of the admission or to withdraw the matter from issue. *Id.; Fisher v. River Oaks, Ltd.* 93-677 (La. App. 3/16/94), 635 So. 2d 1209; *writ den.* 94-0932

4

(La. 6/3/94), 637 So. 2d 503. **Jurisprudence has added the requirement that a party must have relied on the declaration to his detriment before it can be a judicial confession**. *Howard Trucking Co., Inc. v. Stassi,* 474 So. 2d 955 (La. App. 5 Cir. 1985); *affirmed* 485 So. 2d 915 (La.); *cert. den.* 479 U.S. 948, 107 S. Ct. 432, 93 L. Ed. 2d 382 (1986); *Jefferson Parish v. Fidelity & Deposit Co.,* 95–951, 95–952, 95–953, 95–954, 95–955, 95–956, 95–957 (La. App. 5 Cir 4/30/96), 673 So. 2d 1238, 1244; *writ den.* 96–1719 (La.10/4/96), 679 So. 2d 1390. (Emphasis added).

*Krepps v. Hindelang*, 97-980 (La. App. 5 Cir. 4/15/98), 713 So. 2d 519, 524.

La. C.C. art. 1853, comment (b), states that "a declaration made by party's attorney… has the same effect as one made by the party himself," and Louisiana courts have ruled in that accord. *Anderson v. Houston*, 11, 766 (La. App. 2 Cir. 9/23/09), 22 So. 3d 1029, 1032. In this case, there is nothing to satisfy the requirement that the defense relied to its detriment on the appellate argument of plaintiff's attorney. Accordingly, the argument by the plaintiff's attorney does not and cannot constitute evidence – and cannot negate the existence of a genuine issue of material fact.

**This court's presumption that, if a certain location experiences a series of floods, the floods must have all been caused by the same fault is contrary to well-settled law**

The assignment of the burden of proof regarding whether the latest floods were caused by something different than the previous floods could easily be outcome determinative in cases such as this one. Yet the majority opinion completely fails to mention which party it assigned the burden proof on that issue. This is especially troubling in light of La. C.C.P. art. 966(D)(1), which explicitly directs the court to decide the motion for summary judgment based on which party would bear the burden of proof on the issue or issues raised by the MSJ if it went to trial.

The allocation of the burden of proof on prescription issues is a well-known and well-settled area of Louisiana law:

> Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed.

*Carter v. Haygood,* 2004-0646 (La. 1/19/05), 892 So. 2d 1261, 1267.

However, *Newsome* and *Pracht* are totally incompatible with the allocation reflected in *Carter*, *supra*. *Newsome* tacitly presumed that each incident of flooding was caused by the same fault, and imposed the burden of proving otherwise on the plaintiff. *Newsome* involved sewage back-flowing into the plaintiff's house multiple times from 2002 to 2015. In 2015, the Newsomes filed a petition "alleging that the flooding of the property caused by sewage overflow was due to negligence and failure to properly maintain the sewerage system." *Newsome* at 251. Without any further description of the facts alleged in the petition, this court stated:

> Although the Newsomes allege that other flooding events occurred within one year of when the suit was filed, *they have failed to show that the alleged damage to the home was caused by anything other than the overburdened sewerage system*. Thus, the record before us shows that the damage caused by the alleged negligence was evident to the Newsomes by 2004, at the latest. (Emphasis added).

*Id*. at 253. Clearly, the *Newsome* court lacked any basis for concluding that prescription was evident on the face of the petition. "Negligence and failure to properly maintain the sewerage system" is broad, vague, general language which could easily encompass multiple, distinct acts of negligence on the part of the defendant. Such distinct acts of negligence would each constitute a different cause of the flooding. In shifting the burden of proof to the plaintiff, the *Newsome* court erred. *Carter v. Haygood, supra.*

6

Under *Newsome*, a plaintiff whose house floods multiple times in roughly the same manner must, to avoid prescription, either: (1) file suit within a year after the first flood; or (2) thereafter, disprove the presumption that the floods which occurred in the year preceding the filing of suit were caused by the same fault as the earlier floods. The *Newsome* court's tacit presumption amounts to a reversal of the allocation of the burden of proof reflected in *Carter, supra*. It also saddles the plaintiff with the impossible burden of proving a negative: the flood victim who does not sue within a year the first flood must prove that the floods occurring within a year before suit were *not* caused by the same thing as earlier floods. At the very least, this aspect of *Newsome* should be overruled. That is, even if floods all caused by the same fault in the drainage system must be regarded as a single cause of action, the defendant should be assigned the burden of proving that all the floods were caused by the same fault

Even if the series of floods potentially constitutes only a single cause of action, summary judgment based on prescription should be unavailable unless: (1) the defendant introduces *prima facie* evidence that the floods were all caused by the same fault; and (2) that the plaintiff fails to introduce contradictory evidence sufficient to allow reasonable minds to differ (*i.e.*, sufficient to create a genuine issue).

**This court's treatment of a series of floods as single cause of action is wrong and should be overruled**

*Newsome, supra,* and *Pracht, supra,* are in direct conflict with *Everything on Wheels Subaru, Inc. v. Subaru South, Inc.* 616 So. 2d 1231 (La. 1993), which enunciates the Louisiana Supreme Court's standard for determining what does or does not constitute a distinct cause of action. The

logic embodied therein is a foundational precept of our law. The treatment of a series of floods – with as many as seven months in between individual floods – as a single cause of action[3] is an aberration in Louisiana law. *Newsome, supra,* and *Pracht, supra,* must be overruled as a matter of logical coherency in our law, and as a matter of public policy.

A "cause of action" is "the operative facts which give rise to the plaintiff's right to judicially assert the action against the defendant." *Everything on Wheels, supra.* The Louisiana Supreme Court set forth the test for determining whether there is one cause of action or multiple causes of action:

> There is only one cause of action (although several demands or theories of recovery may be asserted thereon) when the operative facts of one transaction or occurrence give rise to the plaintiff's right to assert the action against the defendant. **However, there are separate and distinct causes of action when the operative facts of separate and distinct transactions or occurrences give rise to the plaintiff's right to assert various actions against the defendants.** (Emphasis added).

*Id.*

In *Summerville v. Missouri Pacific R. Co.*, 509 So.2d 639 (La. App. 3 Cir. 1987), the plaintiff's home flooded in 1980 and on December 25, 1982. The plaintiff brought suit on October 5, 1983, and the defendants argued that prescription had expired because the two floods constituted a single cause of action which began prescribing after the 1980 flood. The Third Circuit rejected this argument, and held that the action was not prescribed because it was brought within a year after the latter flood.

---

[3] As previously mentioned, *Newsome, supra,* and *Pracht, supra,* hold that if a series of floods occurs as a result of a constant tortious condition (*e.g.*, an inadequately maintained drainage system), there is only one cause of action, even if the floods are years apart. Accordingly, even if each flood causes discrete, separate, and distinct damage, only the first flood gives rise to a distinct cause of action under these cases.

8

In this case, the floods were spread out over five years, and occurred approximately 2 to 3 times per year. The three most recent of these floods were each separated by several months: April 2015, November 2015, and March 2016; the plaintiff filed suit in August 2016. The interposition of approximately seven months between the April 2015 flood (more than a year prior to filing of suit) and the November 2015 flood (less than a year prior to the filing of suit) floods requires them to be considered separate and distinct occurrences. Each of them was caused by a totally separate and distinct weather system, and each caused separate and distinct damage to the plaintiff's home. The same is true of the November 2015 flood and the March 2016 flood. Accordingly, the flooding that occurred within the 12 months preceding the filing of suit constitutes two separate causes of action, and each has its own one-year liberative prescription. Accordingly, prescription has not accrued with respect these two most recent floods.

Moreover, as illustrated by this case, *Newsome, supra,* and *Pracht, supra,* undermine the basic policies of tort law – compensation of victims and deterrence of tortious conduct. More specifically, they deprive homeowners of the right to seek compensation when their homes flood multiple times over several years and they do not file a lawsuit within a year of the first flood; they also remove the incentive for tortfeasors to remedy whatever condition has caused the flooding.

The judgment of the trial court should be **AFFIRMED.**